2002 SD 41

**ASSOCIATED SCHOOL BOARDS OF SOUTH DAKOTA, INC.,** Petitioner and Appellant,

v.

**HUGHES COUNTY, South Dakota,** Respondent and Appellee.

No. 21985.

Supreme Court of South Dakota.

Considered on Briefs Feb. 11, 2002.

Decided April 3, 2002.

---

Charles P. Schroyer of Schmidt, Schroyer & Moreno Pierre, South Dakota, Attorneys for petitioner and appellant.

Mark Smith, Hughes County State's Attorney, Pierre, South Dakota, Attorney for respondent and appellee.

GILBERTSON, Chief Justice.

[¶ 1.] The Associated School Boards of South Dakota, Inc., (ASBSD) appeals the tax assessed by Hughes County (County) on ASBSD's new building at 306 East Capitol Avenue, Pierre, South Dakota. ASBSD claims that it is entitled to exempt status for more than 42.5 percent of the value of its property because the entities renting ASBSD's property are, themselves, benevolent organizations using the property for benevolent purposes. The circuit court upheld the tax for 57.5 percent of the property. We reverse and remand.

## FACTS AND PROCEDURE

[¶ 2.] ASBSD is an educational organization that provides assistance for 176 member school boards across South Dakota. As a not-for-profit, § 501(c)(3) corporation, ASBSD is exempt from federal income tax. The organization has also been exempt from real property tax since 1987, when it acquired the original building at 306 East Capitol Avenue in Pierre.

[¶ 3.] In 1998, ASBSD obtained additional adjoining land, removed the old buildings, and constructed a larger building at the same location. ASBSD executed a condominium agreement whereby it retained and now owns those portions of the basement and the first two floors (designated Unit. B) that are not "common elements," plus 72.96 percent of the "common elements" located throughout the entire building. "TDK & E, Inc.," (a private corporation not party to this action), purchased and currently owns the third floor of the building (designated Unit A) and the remaining associated "common elements." This dispute is over the taxability of the portions owned, but not occupied by ASBSD.

[¶ 4.] ASBSD occupies 47.7 percent of Unit B, or 6,786 square feet.[1] The value of this portion, as well as the value of the

---

1. ASBSD also donated 160 square feet to Kids Voting South Dakota, a South Dakota non- profit corporation.

"common elements" attributable to ASBSD, is $569,375. The value of ASBSD's portion of the lot upon which the building rests, also 47.7 percent, is $103,418.[2] Accordingly, the total value of the building attributable to ASBSD is $672,793, or 42.5 percent of the total value of the property owned by ASBSD.[3]

[¶ 5.] ASBSD leased out its remaining property to either governmental entities or entities that would, on their own, normally qualify for the benevolent exemption from real estate tax found in SDCL 10–4–9.2. These entities include: (1) the School Administrators of South Dakota (SASD), renting 1,097 square feet under a 15–year lease; (2) the South Dakota Board of Regents (Regents), renting 5,243 square feet under a 5–year lease; and (3) the South Dakota Association of County Commissioners and the South Dakota Association of County Officials (Associations), renting 1,086 square feet under a 10–year lease. All of these entities are essentially non-profit, tax exempt organizations.[4]

[¶ 6.] Following ASBSD's application for exemption and a subsequent investigation, County's Board of Equalization gave a preliminary determination that the property would be 64 percent taxable, leaving only 36 percent exempt. Following notice and a hearing, the Board determined that the property was actually 66.5 percent taxable. ASBSD appealed this decision to the circuit court pursuant to SDCL 10–4–18 and 10–11–44.

[¶ 7.] The circuit court reviewed the Board's decision and found that only 57.5 percent of Unit B, that property owned but not occupied by ASBSD, was taxable.

The court held that ASBSD was exempt from real estate tax for the remaining 42.5 percent of the property. ASBSD now appeals to this Court, contending that it is entitled to an exemption greater than 42.5 percent because the property is owned by a benevolent organization, occupied by benevolent organizations, and used exclusively for benevolent purposes. Thus, ASBSD raises the following issue:

Whether ASBSD qualifies for a real estate tax exemption greater than 42.5 percent.

## STANDARD OF REVIEW

[¶ 8.] On an appeal from an administrative agency decision, this Court reviews the agency findings in the same manner required of the circuit court. *See Alpha Gamma Zeta House Ass'n v. Clay County Bd. of Equalization*, 1998 SD 101, ¶ 7, 583 N.W.2d 167, 168. This standard is set forth in SDCL 1–26–36:

The court shall give great weight to the findings made and inferences drawn by an agency on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings. The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

2. The total value of the lot is $297,000, or $12.00 per square foot.

3. The total value of the property owned by ASBSD is $1,285,595. The basement was valued at $48.97 per square foot and the other floors were valued at $79.63 per square foot.

4. The leases provide, however, that in the event that any portion of the unit is not tax exempt, the resulting real estate assessments may be added on as additional rent.

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

A court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment. The circuit court may award costs in the amount and manner specified in chapter 15–17.

For reversal on questions of fact, the administrative agency must be determined to have been clearly erroneous. *Butte County v. Vallery,* 1999 SD 142, ¶ 8, 602 N.W.2d 284, 286–87 (citations omitted). When, however, the issue is a question of law, we review the decisions of both the administrative agency and the circuit court *de novo. Id.*

■■■ [¶ 9.] This case also involves statutory interpretation, which is reviewed *de novo. Steinberg v. S.D. Dep't of Military and Veterans Affairs,* 2000 SD 36, ¶ 6, 607 N.W.2d 596, 599; *Zoss v. Schaefers,* 1999 SD 105, ¶ 6, 598 N.W.2d 550, 552. Our rules of statutory construction are as follows:

> The purpose of statutory construction is to discover the true intention of the law, which is to be ascertained primarily from the language expressed in the statute. The intent of a statute is determined from what the Legislature said, rather than what the courts think it should have said, and the court must confine itself to the language used. Words and phrases in a statute must be given their plain meaning and effect. When the language in a statute is clear, certain and unambiguous, there is no reason for construction, and [this] Court's only function is to declare the

meaning of the statute as clearly expressed.

*Martinmaas v. Engelmann,* 2000 SD 85, ¶ 49, 612 N.W.2d 600, 611 (citations omitted).

■■■ [¶ 10.] In this case, the statutes to be interpreted involve property taxation and exemption. While statutes imposing a tax are construed liberally in favor of the taxpayer, "[s]tatutes exempting property from taxation should be construed in favor of the taxing power." *Alpha Gamma Zeta,* 1998 SD 101 at ¶ 7, 583 N.W.2d at 168; Appeal of Real Estate Tax Exemption for Black Hills Legal Services, Inc., 1997 SD 64, ¶ 7, 563 N.W.2d 429, 430. "The words should be given a reasonable, natural, and practical meaning to effectuate the purpose of the exemption." *Id.* (additional citations omitted). The burden lies on the taxpayer to show its entitlement to the exemption. *Alpha Gamma Zeta,* 1998 SD 101 at ¶ 7, 583 N.W.2d at 168–69 (citations omitted).

## ANALYSIS AND DECISION

[¶ 11.] **Whether ASBSD qualifies for a real estate tax exemption greater than 42.5 percent.**

■■■ [¶ 12.] There is no question that ASBSD is entitled to a real estate tax exemption for the property it owns and occupies under SDCL 10–4–9.2. This provision states:

> Property owned by a benevolent organization and used exclusively for benevolent purposes is exempt from taxation. *A benevolent organization is any* lodge, patriotic organization, memorial association, *educational association,* cemetery association or similar association. A benevolent organization must be nonprofit and recognized as an exempt organization under section[ ] 501(c)(3) ... as amended, and in effect on January 1,

1992. *However, if any such property consists of improved or unimproved property located within a municipality not occupied or directly used in carrying out the primary objective of the benevolent organization owning the same, such property shall be taxed the same as other property of the same class is taxed.* * * * For the purposes of this section, an educational association is a group of accredited elementary, secondary or postsecondary schools. * * * For purposes of this section, *benevolent purpose means an activity that* serves the poor, distressed or underprivileged, promotes the physical or mental welfare of youths or disadvantaged individuals, or *relieves a government burden.*

SDCL 10–4–9.2 (emphasis added). The circuit court held, and County does not disagree, that ASBSD owns and occupies Unit B as a benevolent organization, using this property exclusively for benevolent purposes. ASBSD is an educational association using its property to relieve a government burden. The question, however, arises in the property not occupied by ASBSD.

[¶ 13.] SDCL 10–4–23 allows property being leased on a long-term basis to be treated as if it were owned by the lessee instead of the lessor.

Property held under a lease for a term of three or more years, . . . belonging to the state or to any religious, scientific, or benevolent society or institution . . .

whose property is not taxed in the same manner as other property, shall be considered for all purposes of taxation as the property of the person so holding the same.

SDCL 10–4–23. In this case, all three entities are leasing their space in Unit B for a period of more than three years. According to the plain language of the statute, the property being leased by them should be subject to tax treatment as if they owned the property.[5]

[¶ 14.] The circuit court found that Regents, SASD and Associations were all "entities which would qualify for the benevolent exemption from real estate tax found in SDCL 10–4–9.2" if they owned the property. They are benevolent organizations using the property exclusively for benevolent purposes, as supported by evidence in the record. County claims that because they do not own the property, their benevolent use must be identical to that of ASBSD. However, SDCL 10–4–23 allows this property to be treated as if the benevolent organizations do own the property. Therefore, the limitation in SDCL 10–4–9.2 yields to SDCL 10–4–23.

[¶ 15.] In certain instances, the Legislature may have intended SDCL 10–4–23 to remove property from exemption, but its overall effect is less sweeping. *See Black Hills Legal Services,* 1997 SD 64 at ¶ 10, 563 N.W.2d at 432 (holding non-exempt entity leasing to exempt entity not eligible for exemption).[6] By enacting

---

**5.** SDCL 10–4–13 also provides a property tax exemption to Regents for any property it owns.

**6.** We recognize this Court has previously held the purpose of SDCL 10–4–23 was to remove property from exempt categories and place it back on the tax rolls. But *Black Hills Legal Services* is distinguishable from the case at bar for one very important reason: there are *no* non-exempt entities here. *Black Hills Legal Services* involved a non-exempt entity us-

ing a creative lease arrangement with an exempt entity to avoid property tax. 1997 SD 64 at ¶ 4, 563 N.W.2d at 430. Similarly, the case we referred to in an example involved an exempt entity leasing to a non-exempt entity. *Id.* at ¶ 11 (citing *Northern Pac. Ry. Co. v. Morton County,* 32 N.D. 627, 156 N.W. 226 (N.D.1915)). We have not, until now, considered the effect that these statutes would have for exempt entities leasing their property to

SDCL 10–4–23, the Legislature sought to ensure, as does any taxing power, that the system of tax exemptions for worthwhile purposes would not be abused. SDCL 10–4–23 is aimed only at preventing those entities that are not exempt from being unfairly sheltered under another entity's benevolent organization exemption. Unlike in *Black Hills Legal. Services,* there is no danger in this case of an organization escaping property tax that it would otherwise be required to pay; all of the organizations are benevolent organizations using the property exclusively for benevolent purposes. Nor is there a need to penalize leases between such entities. The Legislature has determined it is to the state's and the taxpayer's advantage to encourage such arrangements.

[¶ 16.] Furthermore, acceptance of County's assertion would run afoul of another provision within the same chapter. The tax assessed to ASBSD would presumably be determined by the formula set out in SDCL 10–4–12. There is no other provision for calculating partial exemptions and the "shall" language makes the use of this statute mandatory. *See Loyal Order of Moose Lodge No. 1137 v. Pennington County,* 1997 SD 80, ¶ 11, 566 N.W.2d 132, 135 (citations omitted). The code states:

> If property owned by any health care organization or charitable, benevolent or religious society described in §§ 10–4–9 to 10–4–9.3, inclusive, other than agricultural land, is used partly by such health care organization or charitable, benevolent or religious society for health care, charitable, benevolent or religious purposes, and *the remaining part is occupied, rented or used for other than health care, charitable, benevolent or religious purposes, such portion of property as is so occupied, rented or used for other than health care, charitable, benevolent or religious purposes, shall be*

other exempt entities using the property ex-

*taxed as other property of the same class is taxed.* For the purpose of determining the value of the taxable portion of the property, the appraised value of the entire property shall be multiplied by the percentage of the entire property used for other than health care, charitable, benevolent or religious purposes. The resulting value shall be multiplied by the percentage of time such property is used for other than health care, charitable, benevolent or religious purposes. The resulting value shall be the assessed value for taxation purposes.

SDCL 10–4–12 (emphasis added). Clearly, this would present a problem. According to SDCL 10–4–12, only that portion of the benevolent organization's property being used for "other than benevolent purposes" is subject to the real estate tax. To affirm either County's decision, or that of the circuit court, would render SDCL 10–4–12 meaningless because there is no such property here.

[¶ 17.] Giving all three of these statutes their "reasonable, natural and practical meaning," we conclude that County's application of law to the facts in this case is clearly in error. Because we are firmly convinced that a mistake has been made, we reverse the decision of the circuit court and remand for further proceedings consistent with this opinion.

[¶ 18.] SABERS, AMUNDSON, and KONENKAMP, Justices, and GORS, Acting Justice, concur.

[¶ 19.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted to the Court, did not participate.